**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| | * |
| **UNITED STATES OF AMERICA,** | |
| | * |
| **v.** | **Criminal No.: PWG-16-0246** |
| | * |
| **CALEB ANDREW BAILEY,** | |
| | * |
| **Defendant.** | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## AMENDED MEMORANDUM OPINION

Defendant Caleb Andrew Bailey was charged with multiple counts including illegal possession of machine guns, receipt and possession of unregistered short-barrel rifles, receipt and possession of unregistered destructive devices, production and attempted production of child pornography, possession of child pornography, and witness tampering. Revised Second Superseding Indictment, ECF No. 88-2. Prior to trial, the Government filed a motion *in limine*, in which it sought a pretrial ruling precluding Bailey from "eliciting on cross-examination of law enforcement agents certain potentially exculpatory statements Bailey made during his [unrecorded] interviews with law enforcement on May 5, 2016." Gov. Mot. 1, ECF No. 62. In a nutshell, the Government argued that anything Bailey told the agents during his unrecorded interview[1] that it intended to introduce during its case in chief would be admissible non-hearsay (as an admission by a party opponent under Fed. R. Evid. 801(d)(2)(A)), but that anything

---

[1] I previously denied Bailey's Motions to Suppress, ECF No. 52, the two Mirandized statements that he gave to Government agents on May 5, 2015, the day a search and seizure warrant was executed at his residence, which led to the discovery of the evidence that led to the charges pending against him. The guidance in this opinion assumes that the statements given by the Defendant are not inadmissible under the Fourth or Fifth Amendments. Put differently, the focus of this opinion is the law of evidence, and it takes as given that there are no Fourth or Fifth Amendment grounds for suppressing the defendant's statement.

exculpatory that Bailey told them that he intended to elicit under cross examination or otherwise would be inadmissible hearsay, unless he was prepared to testify about it and be subject to cross examination.   Gov. Mot. 2.  Bailey filed an opposition.  Def.'s Opp'n, ECF No. 91.

On May 12, 2017, I held a telephonic hearing with counsel during which I advised that without knowing the specific portions of Bailey's statements that the Government intended to introduce, I was not able to issue a definitive pretrial ruling on the record pursuant to Fed. R. Evid. 103(b), but I nonetheless gave them guidance regarding the approach I would take at trial. I also told them that I planned to issue a written opinion to memorialize my thinking because the issues raised by the Government are recurring in nature, and there is a scarcity of helpful decisional authority in this circuit to guide courts and counsel in resolving the sometimes complicated issues the Government's Motion raises.  This Memorandum Opinion provides that guidance.

Whether the defendant in a criminal trial may compel the Government to introduce his exculpatory statements at the same time that it introduces his inculpatory ones implicates a number of evidentiary rules, including Rules 102 (which instructs judges to interpret the rules of evidence in order to insure fairness, ascertain the truth, and to secure a just determination), 106 (the so-called "rule of completeness"), 401 (relevance), 403 (probative value versus danger of unfair prejudice or confusion); 611(a) (court control over the examination of witnesses and presentation of evidence); and 802 (the rule against admissibility of hearsay, and its exceptions). But where the inculpatory statements given by the defendant to the government were not written or recorded, common-law principles of evidence also apply.  As will be seen, although there is no shortage of case law and treatise analysis on this subject, the law is far from settled, and

courts and commentators have reached starkly different results by applying a variety of approaches, resulting in an evidentiary landscape that is unclear.

It is not my aim in this opinion to untangle the many nuances of the Gordian knot raised by the Government's Motion, but rather to identify the key elements that a court should examine to make an appropriate ruling, consistent with the Rules of Evidence and the still-viable common law.[2] The starting place is the common law evidentiary principle known as the "doctrine of completeness" (which is partially codified as Fed. R. Evid. 106), and its impact on the adversary system.

## I. <u>Common-Law Origins of Rule 106</u>

The relationship between Rule 106 and the common-law doctrine of completeness has been explained by one respected evidence treatise this way:

> Rule 106 arises from the common law completeness doctrine. Both the common law and Rule 106 presume two tenets of the adversary system. First, under the principle of party presentation of evidence, parties—not the court—bear the responsibility to produce evidence of their respective factual claims. An important corollary of party presentation holds that neither party has any obligation to produce evidence that favors the adversary. Second, a principal of sequential procedure, sometimes called "stage preclusion", provides that the trial of an issue of fact follows a sequence of proof and counterproof whereby at each stage the parties alternate roles in presenting and challenging evidence. . . . The two tenets that give rise to Rule 106 are also embodied in Rule 611.

21A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5072 (2d ed. 2005) (footnotes omitted).

---

[2] Following my telephone hearing with counsel but before the entry of this Memorandum Opinion providing the written rationale for my oral ruling, the Defendant entered a guilty plea to certain of the charges. For this reason, there will be no trial. Nonetheless, because I informed counsel that I would memorialize in writing the ruling that I previously made, and because the issues discussed have occurred in past cases where, without the full consideration of the issues that I have given in this case, I reached contrary results, I am filing this Memorandum Opinion. Had the case proceeded to trial, I would have adopted the analysis set out above. It is my hope that the discussion may be helpful to other judges of this court, and counsel, in future cases.

The back-and-forth presentation of evidence in a criminal case usually works fairly smoothly, but problems arise when one party's artful phrasing of a question calls for a response that is technically accurate, but incomplete, altering the meaning of the original statement. A classic example is when the prosecutor elicits from a law-enforcement witness that, when the defendant was interviewed in connection with a homicide investigation, he admitted that he owned the gun used to commit the murder but omits that the defendant also said that he sold the gun three months before the shooting. Quoting the defendant out of context presents a misleading picture for the jury. In such circumstances, if the defendant is required to wait until his case in chief, or even until cross examination, to put his statement to the government witness in its proper context, it might be too late to counteract the impression left with the jury that the defendant, having admitted to owing the murder weapon, was the one who shot the victim.

A. Common-Law Doctrine

"The common law responded to these abuses of the adversary system by a limited restriction on party control of the cases that . . . [is called] 'the completeness doctrine.' " 21A Wright & Graham, *supra*, § 5072. Wigmore's description of the rule of completeness was that "[i]n evidencing the tenor of an utterance material or relevant, made in words, whether written or oral in original or in copy, the whole of the utterance on a single topic or transaction must be taken together." *Id.* (quoting John Henry Wigmore, *Code of Evidence* 371 (3d ed. 1941)). The influential Field Code codified the common law rule of completeness in this manner:

> When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation or writing, which is necessary to make it understood, may also be given in evidence.

*Id.* (quoting N.Y. Commissioners on Practice and Pleading, *Code of Civil Procedure* § 1687, at 704–05 (1850)).

A careful reader will notice straightaway that in its common-law and early-code-law expression, the doctrine of completeness encompassed conversations and other spoken utterances (as well as acts) that had not been memorialized in writing or recorded. Another important feature of the common-law doctrine of completeness was that it allowed the introduction of otherwise inadmissible evidence to give proper context to the incomplete and misleading evidence offered by the original proponent. *Id.* § 5072 ("Thus, the opponent can introduce what would otherwise be hearsay to complete a truncated statement offered by the proponent." (citing *Crawford v. United States*, 212 U.S. 183, 201 (1909))). Less clear was whether the party seeking to complete the record regarding what was said in a writing or conversation could require the proponent to include the content necessary for completeness at the time the incomplete version was presented to the jury or had to wait until his case in chief or cross examination to do so. Most common-law courts would not allow this "acceleration of completeness," but some courts, including the Supreme Court, did. *Id.* (citing *Crawford*, 212 U.S. at 201).

B. Rule 106

The common-law doctrine of completeness has been partially codified by Fed. R. Evid. 106. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171–72 ("The Federal Rules of Evidence have partially codified the doctrine of completeness in Rule 106."); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("The common-law doctrine of completeness has been partially codified in Rule 106 of the Federal Rules of Evidence."). Rule 106 states:

> If a party introduces all or part of a *writing* or *recorded statement*, an adverse party may require the introduction, *at that time*, of any other part—or any other writing or recorded statement—that *in fairness ought to be considered at the same time*.

Fed. R. Evid. 106 (emphasis added). The italicized words highlight several important features of Rule 106. First, it applies only to writings and recorded statements, not to conversations or other oral statements that have not been memorialized in some written or recorded form (hence, Rule 106 only *partially* incorporates the common law rule). Second, when the Rule applies, it permits the party against whom the incomplete information has been introduced to require the introduction of completing information at the same time (the so called "acceleration clause"). Third, the rule only requires the introduction of the completing information when fairness requires that it be considered at the same time as the incomplete information.

The Advisory Committee Note to Rule 106 states:

> The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial. The rule does not in any way circumscribe the right of the adversary to develop the matter on cross-examination or as part of his own case.
>
> For practical reasons, the rule is limited to writings and recorded statements and does not apply to conversations.

Fed. R. Evid. 106 advisory committee's note to 1972 proposed rules (citation omitted). Conspicuously absent from the Rule or the Advisory Note is any indication of whether completing information can be admitted under Rule 106 even if otherwise inadmissible (for example, because it is hearsay).[3] Nor does the Rule or Note give any guidance as to what must be shown to satisfy the "fairness" requirement in order to require the introduction of the

---

[3] In 2002–03, the Advisory Committee considered whether to amend Rule 106 to extend its scope to oral statements and acts, and whether to amend the rule to state that evidence that met the fairness requirement of Rule 106 was admissible even if it would be inadmissible if offered on its own. It ultimately "voted unanimously not to amend Rule 106 on the ground that the costs exceeded the benefits because 'any problems under the current rule were being well-handled by the courts.'" 21A Wright & Graham, *supra*, § 5071 (quoting Advisory Comm. on Evidence Rules, *Minutes of Meeting of April 25, 2003*, at 9).

completing information at the same time as the incomplete information. And, although the Advisory Note states that the rule only applies to writings and recorded statements (and not to conversations) for "practical reasons," it does not explain what those practical reasons are, or how courts should deal with the problem created when one party introduces a misleadingly incomplete portion of an oral statement or conversation.

## II.  **Application of Rule 106**

### A. Independent Admissibility

#### 1. *Split of Authority*

In the absence of guidance from the Rule or the Committee, courts and commentators have been left to answer these questions on their own, with conflicting results. For example, some courts have held that evidence that would be inadmissible if offered independently cannot be used for completeness purposes under Rule 106. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 134–35 (4th Cir. 2014) (holding that district court did not abuse its discretion by excluding defendant's exculpatory statements under Rule 106 because they were inadmissible hearsay); *United States v. Mitchell*, 502 F.3d 931, 965 n.9 (9th Cir. 2007) ("Rule 106 applies only to written and recorded statements, not unrecorded oral confessions, and Rule 106 does not render admissible otherwise inadmissible hearsay."); *United States v. Guevara*, 277 F.3d 111, 127 (2d Cir. 2001) ("Rule 106 does not 'render admissible evidence that is otherwise inadmissible.' " (quoting *United States v. Terry*, 702 F.2d 299, 315 (2d Cir. 1983))), *overruled on other grounds as recognized in United States v. Doe*, 297 F.3d 76, 90 n.16 (2d Cir. 2002); *United States v. Ortega*, 203 F.3d 675, 682–83 (9th Cir. 2000) (holding that Rule 106 would not allow defendant's exculpatory statements because they were inadmissible hearsay); *United States Football League v. Nat'l Football League*, 842 F.2d 1335, 1375–76 (2d Cir. 1998) ("The

doctrine of completeness does not compel admission of otherwise inadmissible hearsay evidence." (citation omitted)); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (holding that the government was entitled to introduce the defendant's inculpatory statements as admissions under Rule 801(d)(2)(A), but that the defendant could not introduce exculpatory portions under Rule 106 because they would be inadmissible hearsay).

What is concerning about many of the cases that have restricted Rule 106 to evidence that is independently admissible is the ease with which they have done so without any real consideration of the common-law history of the doctrine of completeness (which did not limit completing evidence to that which was independently admissible), its purpose to guard against abuses of the adversary system, or the harm that can result from letting one party (for example, the government in a criminal case) have an unfair advantage over another by creating a misleading impression in the minds of the jury that is, as a practical matter, uncorrectable. This hardly lives up to the aspirations of Rule 102 that the rules of evidence should be construed to the "end of ascertaining the truth and securing a just determination."

But not all courts have been so quick to restrict Rule 106 to independently admissible evidence, even at the expense of fairness. In *United States v. Sutton*, 801 F.2d 1346 (D.C. Cir. 1986), the court rejected the notion that only admissible evidence could be used to complete the record under Rule 106. Its analysis is worth quoting at length:

> Rule 106 explicitly changes the normal order of proof in requiring that . . . evidence [within the scope of the Rule] must be "considered contemporaneously" with the evidence already admitted. Whether Rule 106 concerns the substance of evidence, however, is a more difficult matter. The structure of the Federal Rules of Evidence indicates that Rule 106 is concerned with more than merely the order of proof. Rule 106 is found not in Rule 611, which governs the "Mode and Order of Interrogation and Presentation," but in Article I, which contains rules that generally restrict the manner of applying the exclusionary rules. *See* C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5078, at 376 (1977 & 1986 Supp.). Moreover, every major rule of exclusion in the Federal Rules of

Evidence contains the proviso, "except as otherwise provided by these rules," which indicates "that the draftsmen knew of the need to provide for relationships between rules and were familiar with a techniques for doing this." *Id.* There is no such proviso in Rule 106, which indicates that Rule 106 should not be so restrictively construed. *See id.*

Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously. A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court.

The most sensible course is to allow the prosecution to introduce the inculpatory statements. The defense can then argue to the court that the statements are misleading because of a lack of context, after which the court can, in its discretion, permit such limited portions to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence. Such a result is more efficient and comprehensible, and is consonant with the requirement that the "rules shall be constructed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of the law of evidence to the end that the truth may be ascertained and proceedings justly determined. Federal Rule of Evidence 102.

*Id.* at 1368–69 (footnotes omitted); *see also United States v. Harvey*, 653 F.3d 388, 394–95 (6th Cir. 2011) (affirming decision of district court to admit under the rule of completeness recordings that the court previously had ruled inadmissible on their own); *United States v. Bucci*, 525 F.3d 116, 133 (1st Cir. 2008) ("[O]ur case law unambiguously establishes that the rule of completeness may be invoked to facilitate the introduction of otherwise inadmissible evidence."); *United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988) ("The cross-designated portions, while perhaps not admissible standing alone, are admissible as a remainder of a recorded statement. Fed. R. Evid. 106 allows an adverse party to introduce any other part of a writing or recorded statement which ought in fairness be considered contemporaneously. The rule simply speaks the obvious notion that parties should not be able to lift selected portions out of context."); *United States v. LeFevour*, 798 F.2d 977, 980–82 (7th Cir. 1986) ("If otherwise inadmissible evidence is necessary to correct a misleading impression, then

either it is admissible for this limited purpose by force of Rule 106 . . . or, if it is inadmissible . . . the misleading evidence must be excluded too."); *United States v. Green*, 694 F. Supp. 107, 110 (E.D. Pa. 1988) (noting with approval the D.C. Circuit's holding that Rule 106 permits introduction of evidence that is otherwise inadmissible), *aff'd*, 875 F.2d 312 (3d Cir. 1989).

      2.   *Concerns Animating Split of Authority Are Mitigated by Proper Application of Rule 106's "Fairness" Clause*

Perhaps courts' willingness to restrict the use of Rule 106 to admissible evidence reflects the same concern expressed by the Department of Justice when it objected to the revision of the rule in 2002 to permit the use of inadmissible evidence. DOJ "prosecutors argued that amending the Rule would allow defense counsel to make bogus claims that the evidence was taken out of context so that they could get inadmissible evidence before the jury." 21A Wright & Graham, *supra*, § 5071. Fair enough. But it is just as much of an abuse of the adversary system for the prosecution to paint a misleading picture to the jury by introducing out-of-context inculpatory statements by the defendant as it is for a defense attorney to assert "bogus" claims that prosecution evidence was taken out of context as a pretext to "correct" the record by introducing otherwise inadmissible evidence. And it does not answer to prevent the later abuse but permit the former. Moreover, proper application of the "fairness" requirement of Rule 106 should prevent the abuses that the Department of Justice feared because judges should restrict application of Rule 106 to those situations where misleading information actually was introduced by the prosecution and allow only such correcting evidence as is necessary to counteract it. In this regard, courts and commentators have identified various factors that go a long way towards preventing any abuse of Rule 106 that might occur if inadmissible evidence is allowed to complete the record.

To begin with, Rule 106 should never come into play unless misleading evidence has been introduced that requires clarification or explanation—otherwise there is no unfairness that needs correction. *Wilkerson*, 84 F.3d at 696 ("Thus, the rule of completeness . . . would not appl[y] . . . where there was no partially introduced conversation that needed clarification or explanation."). And, judges need not take at face value exaggerated claims that a partially introduced statement requires completion unless it can be shown with some precision just how the incomplete evidence is taken out of context. The Seventh Circuit has identified a four-part test to determine when this has happened:

> Our case law interpreting Rule 106 requires that the evidence the proponent seeks to admit must be relevant to the issues in the case. Even then, a trial judge need admit only that evidence which qualifies or explains the evidence offered by the opponent. The test is conjunctive. Once relevance has been established, the trial court then must address the second half of the test, and should do so by asking (1) does it explain the admitted evidence, (2) does it place the admitted evidence in context, (3) will admitting it avoid misleading the trier of fact, and (4) will admitting it insure a fair and impartial understanding of all the evidence.

*United States v. Velasco*, 953 F.2d 1467, 1474–75 (7th Cir. 1992) (citations omitted).

A respected evidence treatise also has identified a series of factors that help courts identify when the fairness requirement of Rule 106 has been met. They include: (1) Is the proffered evidence taken out of context (does what is missing change the meaning of what was introduced)? (2) Does the lack of context make the evidence misleading (does the admitted evidence "invite" or "permit" a false premise)? (3) Can the misleading impression be dispelled by other means (for example, by instructing the jury not to draw the misleading inference, or by permitting introduction of completing evidence at a later time, such as during cross examination or the defense case, so as not to interrupt the presentation of the prosecution's case)? (4) How much evidence is needed to dispel misleading effects (lawyers should be precise in identifying the information actually needed to correct the misleading impression created by the incomplete

evidence, and judges should be skeptical about allowing expansive introduction of lengthy excerpts from writings or recordings under the guise of "correcting" a misimpression)? (5) How strong is the evidence admitted and omitted (how does the strength of the admitted evidence compare to the strength of the omitted evidence—a minor discrepancy does not require "correction" with a massive introduction of information of little probative value)? (6) How long will repair be delayed if not accelerated (if the completing information is not introduced during the prosecution's case, can the defendant effectively dispel any misleading impression during cross examination or during his case in chief, or will the damage, once done, be irremediable if not immediately addresses)? (7) What is the consequential fact to be proved (if the misimpression goes to an essential element of the prosecution's case—such as the defendant's motive or intent—then there is a more exigent need to insure immediate correction than exists if the incomplete information is primarily relevant to a less critical issue, such as an assessment of a witness's credibility)? (8) How much will completion disrupt or prejudice the proponent (the more disruptive the immediate completion will be of the proponent's case, the more cautious the court should be before allowing it at that time)? And (9) does truncation or completion implicate constitutional rights (if the prosecution introduces incomplete portions of a defendant's confession that, if not completed by introducing other parts of the confession, would require the defendant to waive his Fifth Amendment right not to testify)? 21A Wright & Graham, *supra*, § 5077.2.

Consideration of these factors should be sufficient for any careful judge to determine whether (and if so, how much) completeness is required by Rule 106, and eliminate much of the concern expressed by those who resist the idea of permitting inadmissible evidence to complete the record when fairness legitimately requires it. Unfortunately, to date few cases (especially

those that hold that inadmissible information may not be used for completion purposes) have taken the opportunity to do so.

B.  Oral Statements

A final vexing issue raised (but not answered) by Rule 106 and the enigmatic language of the Advisory Committee Note is what courts should do with regard to oral statements or conversations that have not been memorialized by a writing or recording—particularly when the unwritten or unrecorded statement is the defendant's confession to a law-enforcement officer. On its face, Rule 106 is limited to "writings" and "recorded statements," and the Advisory Committee Note states that for (unnamed) "practical reasons" the rule does not apply to conversations.  Fed. R. Civ. P. 106 & advisory committee's note to 1972 proposed rules.  Many courts have taken this to mean that in a criminal case, the prosecution may elicit a law-enforcement officer's testimony about inculpatory statements made by the defendant because they are admissible under Rule 801(d)(2)(A) as admissions.  But they have also held that, during cross examination of the officer, the defendant may not elicit non-inculpatory statements the defendant made during the same interview because (a) Rule 106 does not apply to oral statements and (b) even if it did, the defendant's exculpatory statements (even if necessary to dispel the misleading, out-of-context impression left by the officer's direct examination) are inadmissible hearsay.  *See, e.g.*, *Ortega*, 203 F.3d at 682–83 ("Even if the rule of completeness did apply, exclusion of Ortega's exculpatory statements was proper because these statements would still have constituted inadmissible hearsay."); *Wilkerson*, 84 F.3d at 696 (holding that Rule 106 did not apply to unrecorded conversation between defendant and FBI agent, and defendant's exculpatory statements to the agents were not admissible under the hearsay rules).

While the "practical reasons" why oral conversations are excluded from Rule 106 undoubtedly include the need to avoid "he said, she said" disputes about the content of an unrecorded or unwritten statement, those concerns do not justify creating an environment in which the prosecution may be able to introduce the defendant's out-of-context inculpatory oral statements, but where the defendant is powerless to do anything at that time because Rule 106 does not reach oral statements. And if there is legitimate concern about the difficulty in establishing what was said in oral conversations, the factors described above provide a judge with the analytical tools to determine whether to allow the evidence during the proponent's case or thereafter during cross examination or during the adversary's case in chief on a case by case basis. A blanket rule of prohibition is unwarranted, and invites abuse. Moreover, if the content of some oral statements are disputed and difficult to prove, others are not—because they have been summarized (for example, in a FBI agent's form 302 summary of the defendant's confession), or because they were witnessed by enough people to assure that what was actually said can be established with sufficient certainty.

1. *Residual Common-Law Completeness Doctrine*

But there is an even more fundamental reason why court decisions that hold that Rule 106 does not apply to oral statements or conversations should not prevent a party from completing the record (at the time the misleading evidence is introduced or thereafter during cross examination or the opposing party's own case) to prevent abuse of the adversary system when a proponent introduces a misleadingly incomplete part of a conversation or oral confession. The reason is that, as the Supreme Court itself appears to have recognized, Rule 106 only *partially* codifies the common law doctrine of completeness, and for situations beyond the reach

of Rule 106, the common law still applies.[4]  *Beech Aircraft*, 488 U.S. at 170–72; 1 Kenneth S. Broun, *McCormick on Evidence* § 56, at 392 n.5 (7th ed. 2013) ("*In Beech Aircraft Corp. v. Rainey*, the Court indicated that Rule 106 'partially codified' the completeness doctrine.  The implication is that the uncodified aspect of the doctrine is still in effect in federal court."); 21A Wright & Graham, *supra*, § 5072.1 (stating that *Beech Aircraft* "impliedly held that Rule 106 does not repeal the common law completeness doctrine").

Further, to the extent that the common-law doctrine of completeness (which allowed even inadmissible evidence to be introduced to dispel misleading evidence of written, recorded and oral statements) applies to oral statements or conversations, commentators have recognized that, when necessary to avoid the prejudice created by introduction of misleading characterization of oral statements, inadmissible evidence should be permitted for completion purposes. One has observed:

> With respect to other parts of writings and recorded statements or related writings and recorded statements, counsel may eschew Rule 106 and develop the matter on cross-examination or as part of his own case.  Similarly, the remainder of oral statements and related oral statements may be introduced by an opposing party on his next examination of the same witness, whether cross or redirect.  Of course, as with written or recorded statements, it is sometimes stated that the additional oral statements may be admitted only if otherwise admissible.  Clearly, the principle of completeness does not give an adverse party an unqualified right to introduce an omitted part of a conversation or related conversation otherwise inadmissible merely on the ground that the opponent has "opened the door."  To the extent however that such evidence, otherwise inadmissible, tends to deny, explain, modify, qualify, counteract, repel, disprove or shed light on the evidence

_____

[4]  The Court resorted to the common-law rule of completeness to reverse the trial court's exclusion of evidence necessary to dispel a "distorted and prejudicial impression" of a witness's letter brought about by a law-enforcement officer's testimony.  *Beech Aircraft*, 488 U.S. at 170.  The Court noted that Rule 106 only "partially codified" the doctrine of completeness and brushed away arguments that completion was not required because Rule 106 did not apply: "While much of the controversy in this suit has centered on whether Rule 106 applies, we find it unnecessary to address that issue.  Clearly the concerns underlying Rule 106 are relevant here, but, as the general rules of relevancy permit a ready resolution to this litigation, we need go no further in exploring the scope and meaning of Rule 106."  *Id.* at 172.

> offered by the opponent, the evidence may be admitted provided its explanatory value is not substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, or waste of time, Rule 403.

2 Michael H. Graham, *Handbook of Federal Evidence* § 106:2 (7th ed. 2012) (footnotes omitted); *see also* Broun, *supra*, § 56 ("It is sometimes stated that the additional material may be introduced only if it is otherwise admissible. However, as a categorical rule, that statement is unsound. In particular, the statement is sometimes inaccurate as applied to hearsay law. At least when the other passage of the writing or *statement* is so closely connected to the part the proponent contemplates introducing that it furnishes essential context for that party, the passage becomes admissible on a nonhearsay theory." (emphasis added) (footnotes omitted)); 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 1:43 (4th ed. 2013) ("Rule 106 does not say whether additional statements (or parts) may be admitted when necessary to provide context if they would otherwise be excludable under other rules, such as the hearsay doctrine. . . . It seems that hearsay objections should not block use of a related statement . . . when it is needed to provide context for statements already admitted. Thus a statement should be admissible if it is needed to provide context under Rule 106 and to prevent misleading use of related statements even if the statement would otherwise be excludable hearsay . . . ."); 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* §106.02[3] (11th ed. 2015) ("[Rule 106] does not on its face state that hearsay is admissible. This has led some courts to hold that Rule 106 operates solely as a timing device, affecting the order of proof—it does not make admissible what would otherwise be excluded. We believe these rulings are misguided and contrary to the completeness principle embodied in Rule 106. A party should not be able to admit an incomplete statement that gives an unfair impression, and then object on hearsay grounds to completing statements that would rectify the unfairness.").

2. *Rule 611's Connection to Rule 106*

Courts, too, have found the means to rectify abuses of the adversary system caused by incomplete or misleading renditions of oral statements by resorting to Fed. R. Evid. 611(a), which provides, in relevant part:

> The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth.

In *United States v. Pacquette*, 557 F. App'x 933 (11th Cir. 2015), the court held "Rule 106 does not apply to oral statements. However, we have extended the fairness standard in Rule 106 to oral statements 'in light of Rule 611(a)'s requirements that the district court exercise reasonable control over witness interrogation and the presentation of evidence to make them effective vehicles for the ascertainment of truth.' " *Id.* at 936 (internal quotation marks and citation omitted) (quoting *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005)); *see also United States v. Verdugo*, 617 F.3d 565, 579 (1st Cir. 2010) (noting that the district court "retained substantial discretion under Fed. R. Evid. 611(a) to apply the rule of completeness to oral statements"); *United States v. Collicott*, 92 F.3d 973, 983 n.12 (9th Cir. 1996) (noting, without disagreement, that other circuits have held that Rule 611(a) gives district courts the same authority regarding oral statements that Rule 106 gives regarding to recorded statements); *United States v. Branch*, 91 F.3d 699, 727–28 (5th Cir. 1996) (noting, without disagreement, that "[o]ther circuits have held that Rule 611(a) imposes an obligation for conversations similar to what rule 106 does for writings"); *United States v. Li*, 55 F.3d 325, 329 (7th Cir. 1995) (holding that Rule 106 does not apply to oral statements, but observing "we . . . have held that Fed. R. Evid. 611(a) grants district courts the same authority regarding oral statements which Fed. R. Evid. 106 grants regarding written and recorded statements"); *United States v. Haddad*, 10 F.3d

1252, 1258 (7th Cir. 1993) ("[Rule 106] refers to written or recorded statements. However, Rule 611(a) gives the district courts the same authority with respect to oral statements and testimonial proof."); *Alvarado*, 882 F.2d at 650 n.5 (holding that Rule 106 applies to writings, but Rule 611(a) "renders it substantially applicable to oral testimony as well").

The evidence commentators agree. 1 Broun, *supra*, § 56, at 394 n.7 (observing that while Rule 106 only applies to writings and recordings, "[n]evertheless, the trial judge appears to have the same power to require the introduction of [the] remainder of oral conversations under Federal and Revised Uniform Rule of Evidence (1974) 611(a)"); 2 Graham, *supra*, § 106:2 ("Under unusual circumstances, the court may require the proponent to introduce contemporaneously other parts of oral conversation pursuant to the general authority of the court to control the mode and order of interrogating witnesses and presentation of evidence [Rule 611(a)]."); 1 Mueller & Kirkpatrick, *supra*, § 1:43 ("It seems that basic notions of relevancy embodied in Rule 401, coupled with the principle in Rule 403 that evidence can be excluded if it is misleading or overly prejudicial, both complemented by the power of trial judges acknowledged in Rule 611 to exercise reasonable control' of the presentation of evidence in order to aid in 'determining the truth,' provide ample basis to apply the completeness principle more broadly. Hence courts can indeed apply essentially the same principle to proof of oral statements, even if they were not recorded or written down, and in cases where they are recorded or written down but the proponent has chosen to prove them by other means, such as testimonial accounts."); Saltzburg et al., *supra*, § 106.02[2] ("While Rule 106 by its terms applies only to writings and recordings, the principle of completeness embodied in the rule has been applied to testimony about oral statements as well (such as a police officer's selective rendition of a defendant's oral statement). Whether this is mandated by Rule 106 or by Rule 611 is unimportant. The important point is

that where a party introduces a portion of an oral statement, the adversary is entitled to have omitted portions introduced at the same time, insofar as that is necessary to correct any misimpression that the initially preferred portion would create." (footnote omitted)); 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 106.02[3] (Joseph M. McLaughlin, ed., 2d ed. 2015) ("[T]he trial court does have an essentially equivalent control [as in Rule 106] over testimonial proof, as part of a judge's general power to control the  mode and order of interrogating witnesses and presenting evidence [referencing Rule 611(a)]."); 21A Wright & Graham, *supra*, § 5072.2 ("Rule 611 is another rule that must be considered along with Rule 106.  Indeed, it is frequently said that Rule 106 is a 'specialized application' of Rule 611. . . .  Perhaps the most expansive use of Rule 611 to supplement Rule 106 is the courts who used Rule 611 to justify continuation of the common law completeness doctrine." (footnotes omitted)).

### 3. *Rule 403*

Finally, Fed. R. Evid. 403 should not be overlooked when considering the implications of the rule of completeness as it relates to writings, recordings, and oral statements.  Rule 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusion the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Even in circuits (such as the Fourth Circuit) that seem to limit Rule 106 to written or recorded statements and that do not appear to allow the introduction of evidence under the rule of completeness to rectify the unfairness caused by the introduction of a misleadingly incomplete description of the content of a writing, recording, or oral statement unless it is independently admissible, *Hassan*, 742 F.3d at 134–35; *Wilkerson*, 84 F.3d at 696, a trial court is not powerless

to address an abuse of the adversary system. If allowing a government witness to testify only to a defendant's inculpatory statements, without being subject to cross examination about the exculpatory portions of the same statement (because they are not independently admissible) would leave the jury with a misleading understanding of the defendant's statement to the extent that it would cause unfair prejudice, the court may give the government a choice: either allow cross examination to provide a complete picture of what the defendant said; or exclude the testimony of the incomplete portion of the statement.

Rule 403 should not be used in this manner, however, unless the testimony regarding the defendant's statement is unfairly incomplete, when measured by the factors discussed above. And, if a defendant seeks to introduce excluded portions of his statement (either during cross examination or in his own case) in order to complete the record, the same factors should be used by the court to ensure that only what is actually necessary to dispel the misleading impression is permitted.

## Conclusion

So, what lessons may be drawn from this discussion? First, the rule of completeness, like its common-law predecessor, is more than just an obscure procedural rule governing the timing of the introduction of writings and recordings. It is tied to the very purpose of the adversary system, which allows the parties to strike blows that are hard but not unfair. The adversary system finds its most important application in the trial of a criminal case. The government has nearly unlimited resources to investigate and bring charges. With that power comes the obligation to prove the charges beyond a reasonable doubt. We take pains to instruct criminal juries that the government bears the entire burden of proof. The defendant is presumed to be innocent, and is not required to prove anything, or even testify. We admonish juries to draw no

adverse inference when a defendant elects not to testify in his case.  We also esteem the defendant's right not to be compelled to incriminate himself and take precautions to avoid the chilling effect that comes with any comment in front of the jury that suggests that they should take note of the fact that he chose not to testify.

If a prosecutor introduces an incomplete version of the defendant's written or oral statement to the investigating officers by eliciting only the inculpatory portions, while leaving out exculpatory ones that, in fairness, would paint a more complete picture and dispel a misleading impression that the jury may have reached having heard only the incomplete portions, then the defendant is at a serious disadvantage.  If he is unable to introduce the parts of his statement that the government omitted at the same time that the incomplete version is presented to the jury (or instead very shortly thereafter on cross examination, or even later during his own case) because the court rules that the omitted parts are inadmissible hearsay or (if the statement was an oral one) that Rule 106 is inapplicable to oral statements, then he has only two remaining options:  (1) allow the misleading version to stand unchallenged; or (2) waive his rights against self-incrimination and testify—but only after the government has completed its case.  This is a high price to pay to correct misleading information.  If one accepts, as the language of the Rule requires, that Rule 106 may only be invoked in the first place to correct an unfair presentation of incomplete information, then construing Rule 106 the way that many courts have done countenances an abuse of the adversary system that the common-law rule of completeness was designed to prevent.  That is why the better-reasoned cases have held that, where necessary to redress an unfairly incomplete rendition of a written, recorded or oral statement, evidence that would otherwise be inadmissible may be introduced.

Second, the goal of Rule 106 and the common-law rule of completeness is to level the playing field, not tilt it in favor of the defendant. For that reason, it should only come into play when it is clear that the incomplete version of a written, recorded or oral statement is unfairly misleading. And only information that is essential to dispel the misleading impression should be admitted. This is especially true if, as the better-reasoned cases have concluded, inadmissible evidence may be used for this purpose. For this reason, judges have an obligation to carefully examine both the assertedly misleading information and the proffered completing information to insure that the evidence that was introduced requires clarification or explanation, and the proffered evidence is essential to clarify or explain. Careful consideration of the factors that courts and commentators have developed will allow a judge to strike the right balance, and offset any concern about the use of inadmissible evidence where necessary to correct unfairly incomplete evidence. *See supra*, § II.A.2.

Third, there is little persuasive justification for not applying the same principles to oral statements that Rule 106 applies to written or recorded ones. A misleading oral statement is no less unfair that a written one. And the cases that have allowed the use of Rule 611(a) to achieve this result seem better reasoned than the ones that have not. *See supra*, § II.B.2. Similarly, it seems ill-advised to conclude, as some courts have done, that only admissible evidence may be used under Rule 106 or the common law rule of completeness without first considering the underlying purpose of the rule, which is to prevent an abuse of the adversary system. *See supra*, § II.A.1. One can hardly claim the moral high ground through a willingness to accept an unfair result in the name of evidentiary purity. As the D.C. Circuit noted in *Sutton*, "Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the offered evidence should be considered

contemporaneously. A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court." 801 F.2d at 1368–69.

Finally, if a trial court is compelled by reason of the governing circuit authority to restrict Rule 106 to writings and recorded statements (and precluded from using Rule 611(a) to adopt the protections of Rule 106 for oral statements), or is prevented from admitting inadmissible evidence when necessary to dispel an unfairly misleading version of a written or oral statement introduced by the prosecutor, the court should carefully consider Rule 403. *See supra*, § II.B.3. If the incomplete version offered by the government would cause unfair prejudice to the defendant, or tend to mislead the jury, then the court—unable because of restrictions imposed by circuit authority to redress the prejudice—should prevent the government from introducing the unfairly misleading evidence to the jury.

The ultimate conclusions that I reach in light of the foregoing discussion are:

(1) Rule 106 only covers writings or recordings, but its codification does not preempt the application of the common-law rule of completeness for oral statements and conversations. If the common-law rule is applied to oral statements and conversations, the court should consider the factors discussed at § II.A.2 to determine whether the completing information is required at the same time that the incomplete information is introduced or whether it should be admitted at cross examination or later.

(2) As an alternative means of dealing with oral statements or conversations, Rule 611(a) allows the trial judge to apply the same underlying logic of Rule 106.

(3) Neither Rule 106 nor the common-law rule of completeness is triggered unless some clearly identifiably unfairness would exist without allowing the party that would be prejudiced the opportunity to offer information that would clarify or explain. The trial

judge must carefully examine both the incomplete and completing information to insure that fairness does require the correction, and limit the correcting information to that actually needed to eliminate the unfairness. The factors discussed in § II.A.2 should be used by the judge in conducting this analysis.

(4) When the fairness principles that underlie Rule 106 and the common-law rule of completeness require application of the doctrine, both admissible and inadmissible information should be available to set the record straight. While there is Fourth Circuit authority holding that inadmissible evidence may not be used, *Hassan*, 742 F.3d at 134–35; *Wilkerson*, 84 F.3d at 696, there also is authority holding that it may, *Gravely*, 840 F.2d at 1163, and until this split in authority has been resolved, a court may allow inadmissible evidence under the completeness doctrine, subject to the restrictions mentioned in my third conclusion above.

(5) If the Fourth Circuit should clarify that inadmissible evidence is not available to complete the record under Rule 106, the common law, or Rule 611(a), then the trial court should carefully consider Rule 403, and if the unfairness that would result from the proponent's introduction of the incomplete information cannot adequately be addressed by other means, exclude the misleading information pursuant to Rule 403.


Date: <u>November 6, 2017</u>                         <u>         /S/         </u>
                                                      Paul W. Grimm
                                                      United States District Judge